Argued 15 March, decided 28 March, 1904.

## ZORN *v.* LIVESLEY.

[75 Pac. 1057.]

NOTICE IMPUTED BY RECORD OF CHATTEL MORTGAGE.

1. The proper record of a chattel mortgage conclusively imputes notice of the contents of the instrument, and of the mortgagee's rights thereunder, irrespective of actual notice.

STRIKING OUT CONCLUSIONS OF LAW.

2. Conclusions of law have no place in a pleading under the Oregon Code, and the trial courts act within their discretion in striking them out.

DUTY OF CHATTEL MORTGAGEE TO TAKE POSSESSION ON DEFAULT.

3. A chattel mortgagee whose mortgage is properly recorded may safely rely on the notice conveyed by the record, and is not obliged for his protection to take possession of the mortgaged property, even when he is entitled to do so.

ESTOPPEL ON CHATTEL MORTGAGEE TO ENFORCE LIEN.

4. To give the conduct of a chattel mortgagor the effect of an estoppel against the enforcement of the lien he has created, unless he is the agent of the mortgagee, it must appear that he intended to defraud the purchaser of the mortgaged property, that the mortgagee knew of such intention but remained silent, and that the purchaser acted in good faith to his injury.

EXAMPLE OF A PLEADING NOT A DEPARTURE.

5. Where a complaint for conversion by chattel mortgagees against a purchaser from the mortgagor alleged the giving of the mortgage to secure a note for money already advanced and further advances, and the answer denied that the mortgage was given to secure any greater sum than a certain amount alleged to have been repaid by the mortgagor, a reply alleging the advancement by plaintiffs to the mortgagor of the sum stated in the answer prior to the date of the mortgage, and the agreement on that date to advance a further sum, and the making of the note and mortgage to secure the past and future advances, was not a departure from or abandonment of the complaint, but merely a new assignment, making definite the allegation of the complaint, so as to meet the attempted defense of the answer.

EVIDENCE OF AGENCY.

6. A request to a teamster to haul certain property to a warehouse is not an authority to do anything with the property except to deliver it at the designated place.

SUBMITTING IMMATERIAL QUESTION TO JURY.

7. Courts should not submit to juries questions on which there is no competent evidence.

From Marion : GEORGE H. BURNETT, Judge.

This is an action by John Hoefer and Casper Zorn, partners as Hoefer & Zorn, against T. A. Livesley and John J. Roberts, partners as T. A. Livesley & Co., to recover damages for the alleged conversion by the defendants of fifty-two bales of hops. It is averred in the complaint, in substance, that on August 2, 1902, Sing Boo gave plaintiffs a chattel mortgage on all his interest in twenty-three acres of growing hops, to secure the payment of a promissory note of even date therewith for $2,000, with interest at 6 per cent per annum, due ten days from date ; that the mortgage was also given " for money already received from said plaintiffs, Hoefer & Zorn, and also for further advances to be paid at hop-picking time for picking, drying, baling, and other necessary expenses connected with the harvesting of the same"; that the hops were to be cultivated, picked, cured, and baled by Sing Boo, and delivered at the dryhouse on the premises, in good, merchantable order, to the plaintiffs, who were to hold and sell them as their property for the payment of the note at maturity ; that in case Sing Boo should attempt to sell or dispose of the hops without first obtaining the written consent of the plaintiffs, it should be lawful for them to take immediate possession thereof and sell the same; that between the 25th day of January and the 10th of October, 1902, plaintiffs furnished and paid to Sing Boo, in money and supplies, $2,220.23, on account of the debt secured by the mortgage ; that Sing Boo failed and neglected to pay the note at maturity, or any part thereof, except the sum of $974.72, paid on October 10, 1902, and there is now due and owing thereon the sum of $1,054.61 and interest; that, by reason of the failure of Sing Boo

to pay the note as agreed upon, the plaintiffs became and
are now the special owners of the hops, and entitled to
the immediate possession thereof; that, after the harvest-
ing and baling of the hops, fifty-six bales were sold by
Sing Boo, and the net proceeds thereof, after deducting
the advances made by the plaintiffs for picking and other
harvesting expenses, were credited on the promissory
note; that on December 13, 1902, the defendants wrong-
fully and unlawfully took possession of the remainder of
the hops, consisting of fifty-two bales of the aggregate
weight of 9,956 pounds, and of the reasonable value of
$2,500, and unlawfully and wrongfully converted the same
to their use, to plaintiffs' damage in the sum of $1,300.

Defendants moved to make the complaint more definite
and certain, by requiring the plaintiffs to allege the amount
advanced by them to Sing Boo at the making of the note,
the amounts previously received by him from the plain-
tiffs, and which is alleged to have been a part of the con-
sideration for the mortgage, the dates and amounts of all
other advances made since the execution of the mortgage,
and the amount received by Sing Boo for the sale of the
fifty-six bales of hops sold by him on the 10th of October,
and also the items and particulars of the alleged advances
made by plaintiffs for picking and other harvesting ex-
penses. This motion was overruled, but the plaintiffs
served upon the defendants a bill of particulars showing
all the information sought by the motion.

Thereafter they answered, admitting the making of the
note and mortgage by Sing Boo to plaintiffs, the condi-
tions of the mortgage as set out in the complaint, and the
amount of money advanced and paid by the plaintiffs to
Sing Boo on account of the debt secured by the mortgage,
as alleged, but denying that the mortgage was given to
secure any greater sum than $627.22, the alleged payment
upon the note by Sing Boo, the balance alleged to be due

plaintiffs, and that plaintiffs are entitled to the possession of the hops, or that defendants wrongfully or unlawfully took possession of them, or converted them to their own use. For further and separate defenses, it is alleged : (1) That the only consideration for the promissory note mentioned in the complaint was the sum of $627.22, and that the note was paid in full by the proceeds of the fifty-two bales of hops sold by Sing Boo; (2) ·That on or about the 10th of December, 1902, the plaintiff surrendered and delivered the hops now in controversy to Sing Boo, and authorized him to sell the same as their agent, free from the mortgage lien, and gave him authority to deliver the hops to the defendants, as the purchasers thereof, and to receive the purchase price, and that on or about the 6th of December, the defendants, in good faith, and for a valuable consideration, contracted to buy the hops of Sing Boo, and the hops were delivered to them on the 15th of December, at which time they paid Sing Boo the agreed price therefor; (3) That the plaintiffs ought not to be permitted to allege, as against the defendants, that they have a prior lien upon the hops by virtue of their chattel mortgage, because they failed and neglected to take immediate possession thereof after the harvesting, or to sell the same, as stipulated and agreed in the mortgage, but, on the contrary, allowed the hops to remain in the possession of Sing Boo, with authority to sell, long after the maturity of the debt; that they allowed and permitted Sing Boo to sell and deliver the hops to the defendants free from the mortgage lien, and consented and permitted him to remove them from the plaintiffs' farm, where they had been grown, in order that he might deliver them to the defendants; that Sing Boo, with the knowledge, consent, and authority of the plaintiffs, sold and delivered the hops to the defendants, and that plaintiffs failed and neglected to advise the defendants of their mortgage lien, but consented and al-

lowed the sale to be made; and that the defendants, relying upon the possession of the hops by Sing Boo, and that he claimed to be the owner thereof, bought them in good faith, and for a valuable consideration, without any notice or knowledge of the plaintiffs' mortgage, except such as the record thereof might give. A motion to strike out parts of the first separate defense and a demurrer to the third were sustained.

The plaintiffs replied, denying the material allegations of the answer, and further alleging that during the year 1902 Sing Boo was engaged in the cultivation and raising of a crop of hops on their farm; that on or prior to the 3d of August of that year they had advanced to him, in money and supplies, $627.22, and on the last-named day agreed to advance and pay to him, as he might require for picking, curing, and caring for the hops, a sum which, with the amount already advanced, would make $2,000; that, to secure the payment of the amount already advanced and future advances, Sing Boo made, executed, and delivered the promissory note and mortgage mentioned in the complaint; that, in pursuance of such agreement, plaintiffs advanced and furnished to Sing Boo, in money and supplies, between the 25th of January, 1902, and the 10th of October of that year, the sum of $2,220.32, no part of which had been repaid, except the sum of $220.32, advanced over and above the sum of $2,000, and the sum of $974.72, paid on the 10th of October, 1902, and credited on the $2,000 note. A motion to strike out portions of the new matter in the reply, because "immaterial, irrelevant, and redundant," and a demurrer to the whole thereof on the ground that it did not state facts sufficient to constitute a reply to defendants' answer, were overruled, and the cause came on for trial before the court and jury.

Mr. Hoefer was called by plaintiffs as a witness, and produced and identified the chattel mortgage and note re-

ferred to in the complaint, which were admitted in evidence
without objection. The bill of particulars furnished by
the plaintiffs to the defendants before their answer was
filed was also produced, identified by the witness, and ad-
mitted without objection. The witness testified that, of
the hops raised on the plaintiffs' farm by Sing Boo in the
year 1902, he was entitled to 108 bales; that, of this amount,
56 bales were contract hops, and were hauled to Gervais
and sold by Sing Boo, and the proceeds collected by the
plaintiffs, $974.72 thereof credited on the promissory note
on October 10th, and the remainder applied to the pay-
ment of the amount advanced by plaintiffs to Sing Boo,
over and above the $2,000 secured by the mortgage; that
plaintiffs never in any manner consented to the defend-
ants' taking the 52 bales of hops, or to the shipping thereof;
that on Sunday, November 23d, the witness gave to a Chi-
naman, to be delivered to Mr. Becker, a tenant of his, an
order as follows:

"Champoeg, Nov. 24, 1902.

Mr. C. Becker.

You will haul Sing Boo hops to the River Warehouse
and charge to us, 52 bales.          Hoefer & Zorn."

He also said that the warehouse referred to in the order
belonged to the plaintiffs, and it was the intention that
the hops should remain in the warehouse until sold with
the plaintiffs' knowledge; that plaintiffs never authorized
the Chinaman or any one else to sell the hops.

Mr. Roberts, one of the defendants, testified that he con-
tracted with Sing Boo for the hops in controversy on the
6th of December, 1902, and that they were received by the
defendants on the 15th, being shipped by river boat; that
defendants received a shipping receipt for the hops from
Sing Boo, which they exchanged with the Southern Pacific
Company for a warehouse receipt. Charles Becker, a wit-
ness for the defendants, testified that he was a tenant of

the plaintiffs; that he received the order referred to by
the witness Hoefer from a Chinaman who worked for Woh
Sing; that he hauled the hops to the river, as requested,
and put them in the warehouse; that the hops were loaded
on the boat on the same day, and that the witness was pres-
ent at the time; that plaintiffs paid him for hauling the
hops. The witness was then shown the shipping receipt
issued by the steamboat company to Sing Boo for the hops
shipped to the defendants, and was then asked if he got
the receipt, or had possession of it, on the day he hauled
the hops to the river, but objection to the question was
sustained on the ground that the witness was not shown
to have any authority from the plaintiffs to ship the hops
or take a receipt therefor.

This is, in substance, all the evidence on the hearing
material to any question presented on the appeal. At the
close of the testimony both parties moved for a directed
verdict. The plaintiffs' motion was sustained, and the de-
fendants appeal.　　　　　　　　　　　　　　　　　AFFIRMED.

For appellants there was a brief and an oral argument
by *Mr. William M. Kaiser* and *Mr. Woodson T. Slater.*

For respondents there was a brief and an oral argument
by *Mr. George G. Bingham.*

MR. JUSTICE BEAN, after stating the facts in the forego-
ing terms, delivered the opinion of the court.

There was no error in sustaining the motion to strike
out parts of the defendants' first separate answer, and in
sustaining the demurrer to the third. The motion was
directed to an allegation that defendants had no knowl-
edge or notice of plaintiffs' mortgage at the time they
bought the hops, except the constructive notice which the
record imputed to them, and a conclusion of law that, by
reason of certain facts pleaded, the plaintiffs "waived and

surrendered their alleged claim of the mortgage lien upon the said hops."

1. The mortgage was of record, and the record conclusively imputed notice to the defendants of its contents, and of plaintiffs' rights thereunder. It was therefore no defense that at the time they purchased the hops they did not have actual notice of the mortgage.

2. If the plaintiffs had, by their acts or conduct, waived their rights under the mortgage, the waiver came from the facts pleaded, and not from the conclusion drawn by the pleader therefrom. It is alleged that plaintiffs delivered possession of the hops to Sing Boo, and authorized him to sell them to the defendants free and discharged from the mortgage lien, and to receive the purchase price thereof. This, if true, constituted a complete defense, and there could be no injury to the defendants in striking out the averment that they thereby waived and surrendered their lien as against the defendants. Nor were defendants denied the right to give any competent evidence on the trial they might have, supporting the defense.

3. The third defense was substantially the same as the second, and was not sufficient to constitute an estoppel. The plaintiffs were not obliged, in order to preserve their lien, to take immediate possession of the hops after they had been harvested and baled, although they had the right to do so under the mortgage. If they allowed the hops to remain in the possession of the mortgagor, it would not evidence an intention to release their lien. The mortgage was of record, and they could safely rely upon the notice conveyed by the record.

4. In order to estop the plaintiffs by any act of Sing Boo, unless he was their agent for the sale of the hops, they must have had knowledge of his purpose and intention, and the defendants must have relied thereon in ignorance of the truth. "Before it can be claimed," said Mr.

Justice THAYER in *Page* v. *Smith*, 13 Or. 410 (10 Pac. 833), "that a party shall not be permitted to falsify his own declaration, act, or omission, it must be shown that he thereby intentionally and deliberately led the other party to believe a particular thing true, and to act upon such belief. And his answer to a pleading in a case must show that such was the fact." The defendants' answer falls far short of this requirement. There is no averment that the plaintiffs, by their acts or conduct, intentionally and deliberately led the defendants to believe that the hops belonged to Sing Boo, or that, relying thereon, the defendants were misled and deceived. The allegation is that the plaintiffs allowed the hops to remain in the possession of Sing Boo with authority and permission to sell and dispose of them free from the lien of the mortgage, thus setting up in substance the same defense as the one already pleaded.

5. The new matter alleged in the reply is not a departure from the cause of action set up in the complaint. There is some uncertainty in the complaint as to whether the note, for the security of which the chattel mortgage was given by Sing Boo to the plaintiffs, was intended to include the money already received by him from the plaintiffs and future advances, or whether such money and advances were to be in addition to the note, and a defense is sought to be made on this ground. The reply, in answer to this defense, and in support of the complaint, sets out the same matter more in detail. It is not repugnant to, nor an abandonment of, the cause of action set up in the complaint. It was merely designed to affirm the averments of the complaint and make them more certain, and was but a new assignment of the cause of action alleged, and therefore not a departure : *Mayes* v. *Stephens*, 38 Or. 512 (63 Pac. 760, 64 Pac. 319); *Crown Cycle Co.* v. *Brown*, 39 Or. 285 (64 Pac. 451); *Kiernan* v. *Kratz*, 42 Or. 474 (69 Pac. 1027, 70 Pac. 506).

6. No error was committed in sustaining the objection to the question propounded to the witness Becker in referring to his possession and knowledge of the shipping receipt issued by the steamboat company to Sing Boo. He was not the agent of the plaintiffs for the purpose of selling and shipping the hops, or doing anything with them, unless it was to haul them to the plaintiffs' warehouse. All the evidence shows is that the plaintiffs authorized and requested him to haul the hops to the warehouse; but that would not make him their agent for the purpose of shipping them and taking a shipping receipt therefor, or charge the plaintiffs with his knowledge in reference thereto.

7. Nor was there any evidence upon which to submit to the jury the question of Sing Boo's authority to sell the hops. The plaintiff Hoefer testified that he never gave Sing Boo or any other person any authority to sell the hops, and this evidence stands uncontradicted. There is no doubt that the sale of a chattel by the mortgagor with the consent of the mortgagee, and with the intent on his part to relinquish the lien, would convey a good title to the purchaser, free from the lien : 2 Cobbey, Chattel Mort. § 637. But there is no evidence to bring this case within the rule. The order to Becker was nothing more than the consent of the plaintiffs that the hops might be removed to their warehouse, and there stored until sold with their knowledge. They were not to be removed from the warehouse without their consent. There is no evidence of any intent on the part of the plaintiffs to allow the hops to get beyond their control, or to permit the sale thereof; and, without some such evidence, there was nothing for the jury.

It is argued that, because the hops were in the possession of Sing Boo after they had been hauled by Becker to the river, there is a presumption that the mortgage had

been paid; but, if so, it was overcome by the testimony, which shows that Sing Boo got possession of the hops from plaintiffs' warehouse and shipped them without plaintiffs' knowledge or consent.

It is also argued that it was not shown by the plaintiffs that the note and mortgage executed by Sing Boo to them had not been paid and settled in full. Conceding that this was an issue in the case, and that the burden was upon plaintiffs, there was sufficient *prima facie* evidence of that fact. The note and mortgage were produced by the plaintiffs, their execution proven, and they were admitted in evidence. In addition, the bill of particulars which was furnished the defendants, and which shows in detail all the transactions between the plaintiffs and Sing Boo, was also admitted without objection. It purports to show an itemized statement of all the money paid and advanced by the plaintiffs, and all credits and payments made by Sing Boo, and it does not appear that special attention was called to the alleged defect in the evidence upon the question of the nonpayment of the note and mortgage.

The judgment of the court below will therefore be affirmed.                                              AFFIRMED.

---

Decided 28 March, 1904.