Argued 7 March, decided 16 April, 1907.

## FISCHER *v.* CONE LUMBER COMPANY.

89 Pac. 737.

LOGS—EVIDENCE OF CONSENT TO SALE.

1. In this action, under B. & C. Comp. § 5692, for damages for rendering difficult, uncertain or impossible of identification logs subject to laborers' liens, the evidence is insufficient to support a finding that the logs were sold and delivered with the knowledge and consent of all the lienholders.

LOGS—DURATION AND CONTINUITY OF LIEN.

2. Under a statute conferring a right to a lien for labor or materials, and requiring a notice of the intention to claim the lien, as, Sections 5677 and 5683, B. & C. Comp., relating to loggers' liens, and the statutes giving liens to laborers on buildings and in mines, the lien attaches at once upon the completion of the work and by law continues for a specified time, but beyond that period it can be continued only by filing the prescribed notice—unless the notice is filed the lien expires.

LOGGER'S LIEN—EFFECT OF DESTRUCTION OF LOGS.

3. The sawing into lumber of logs subject to a lien in favor of the persons who labored in preparing them for market does not affect the lien, since the subject-matter is not destroyed, but is only changed.

EFFECT OF ASSIGNING LOGGER'S LIEN ON RIGHT TO DAMAGES FOR RENDERING IDENTIFICATION DIFFICULT.

4. An assignment of a laborer's lien on logs carries with it the right to the remedy given by B. & C. Comp. § 5692, providing that any person who shall injure or render difficult or impossible of identification logs upon which there is a lien, without the consent of the person entitled thereto, shall be liable to the lienholder for the damages to the amount of the lien, although the alleged injury was committed before the assignment, since such remedy is for an injury to the lien, and not for an injury to the right in the property.

APPEAL—DEFECTIVE STATEMENT OF CAUSE OF ACTION.

5. Where, in an action for damages for injury to the laborer's lien on saw logs, the complaint does not contain any distinct formal allegation that the lien notice was filed as required by statute, but set out a copy of the lien notice, which stated when the labor was performed and when rendition of services was closed, and that "thirty days have not elapsed since that time," the statement amounts to a defective statement of the facts recited, and, in the absence of a demurrer, is sufficient to sustain the complaint against an objection made for the first time on appeal.

DUTY TO MAKE FINDINGS IN LAW ACTIONS.

6. The findings in a law action tried by the court must cover all the material issues and they must be made by the trial judge; the supreme court cannot decide the proper deductions to be drawn from conflicting evidence.

From Multnomah: ARTHUR L. FRAZER, Judge.

Statement by MR. COMMISSIONER SLATER.

This is an action by W. G. Fischer against the G. W. Cone Lumber Co. for damages under the statute for rendering difficult, uncertain or impossible of identification 431 saw logs containing about 178,000 feet of lumber and 25 boom sticks, which it is alleged were subject to laborers' liens. The complaint contains 10 separate but similar causes of action, of which only the first will be noticed. Plaintiff sues as the assignee of Frank Miller and nine other lienholders who between March 12 and September 12, 1904, performed work upon and assisted defendant W. P. McIntire in cutting, hauling, preparing and rafting said logs in Columbia County. The logs were made capable of identification by means of certain marks put thereon when they were being cut. About September 12, 1904, McIntire sold the logs to the defendant the Cone Lumber Co., a corporation, which towed them on September 14 from near Rainier in Columbia County, to its sawmill near St. Johns, in Multnomah County, and, having commingled them with other logs, within three days thereafter sawed them into lumber, rendering their future identification difficult, uncertain or impossible. After stating the foregoing facts, plaintiff alleges that on September 15, 1904, Miller made, and on September 20 had recorded in the Record of Laborers' Liens in Columbia County, a notice of a laborer's lien in form substantially as required by Section 5683, B. & C. Comp.; a copy of which is set forth at length in the complaint.

McIntire defaulted, but the Cone Lumber Co. answered, denying the material allegations of the complaint, and also alleging, in effect, that shortly prior to September 12, 1904, McIntire had an agreement with plaintiff's assignors, whereby he (McIntire) was to sell the logs and collect the proceeds thereof in his own name, and pursuant thereto he did sell and deliver to it the said logs, and that it purchased them and removed them from near Rainier, Columbia County, with the knowledge and consent of each of said lien claimants; that at the time of the purchase it paid McIntire $250. leaving due and unpaid $686 85: that thereafter, and before the commencement of this action,

and before the filing of the liens, the said balance due McIntire was garnished by other creditors of McIntire. The reply denied the new matter of the answer. The cause was tried before the court without a jury, and, after taking testimony, findings were made to the effect that plaintiff's assignors had performed work upon said logs, and the several amounts due each of them from McIntire generally, as alleged, and that they had filed liens as alleged, but that they had waived their liens by consenting to the sale of the logs by McIntire to the company. Judgment was rendered dismissing the action.

Objection, however, was made by plaintiff to the second part of the sixth and to the twentieth findings, on the ground that there was no testimony to support either of said findings. That part of the sixth finding to which objection is made is to the effect that after September 14, 1904, the balance of the purchase price of the logs was attached by other creditors of McIntire. The twentieth finding is as follows:

"That defendant McIntire sold and delivered said logs to defendant G. W. Cone Lumber Co. with the knowledge and consent of all the claimants mentioned in the complaint as having assigned their claims to plaintiff; that defendant McIntire was authorized by all said claimants to sell and deliver said logs to defendant G. W. Cone Lumber Co. free from all claims; and before said sale it was agreed by and between defendant McIntire and all said claimants that defendant McIntire should sell said logs free from all claims, and collect the proceeds thereof, and from the proceeds thereof received by said McIntire for said logs he was to use a portion thereof to pay the camp bills, and the remainder distribute to said claimants upon said claims."

REVERSED.

For appellant there was a brief over the names of *Ralph Roloefson Duniway* and *W. C. Fischer,* with an oral argument by *Mr. Duniway.*

For respondent there was a brief over the names of *J. N. Pearcy, Gammans & Malarkey* and *Francis D. Chamberlain,* with oral arguments by *Mr. Pearcy* and *Mr. Chamberlain.*

MR. COMMISSIONER SLATER delivered the opinion.

As we view the matter, it is not necessary to determine the merits of plaintiff's objection to the sixth finding. The gist of this action is whether there was a lien upon the logs at the time they were taken and sawed up by the defendant company. If there was, and defendant injured, impaired or destroyed them or rendered their identification difficult, uncertain or impossible, without the express consent of the person entitled to such lien, it is liable in damages therefor to the lienholder to the amount of his lien, unless said lien was waived; and, if there was no such lien, it would not be liable. So, then, it is wholly immaterial whether or not the company was afterwards garnished by a creditor of the former owner of the logs.

1. Plaintiff's objection to the twentieth finding, which is set out in full in the statement of facts, is that there is no evidence to support it, and that it is broader than the allegations of the answer. The bill of exceptions purports to contain all the evidence upon which this finding is based. Briefly summarized, the testimony shows that McIntire had been in the habit of selling the logs produced by him and collecting and paying his laborers out of the proceeds. In this instance he says: "I calculated to collect the money and pay it over to the men." He came to Portland the next day after the sale of the raft for that purpose, and the laborers knew of his going and for what purpose he went. On being asked whether they consented to that, he says:

"I just came up the same as I always done ever since I have been down there, and collected the money, or either gave Fischer an order and he collected it, and came back and paid it."

And, again being asked what was the understanding between them, he answered:

"There was no understanding. Of course, I supposed they wanted their money as far as the raft would go. If there wasn't enough to pay them, they went back and made enough to pay them."

The laborers had also come to Portland, and were at the hotel expecting to receive their money; but this proves no more than

that the laborers knew that a previous sale had been made and were expecting to receive their pay either from McIntire or from the purchaser, for their is testimony in the record from which a conclusion might be drawn that they expected to collect from the company through the plaintiff as their agent. A consent to a sale cannot be inferred by their mere silence on being informed that a sale and delivery had been consummated: *Patterson* v. *Taylor,* 15 Fla. 336. There is no evidence tending to show that plaintiff's assignors at the time of or prior to the sale expressly or impliedly consented thereto, if, indeed, an assent with nothing more would be sufficient to waive their lien, but there must be coupled therewith an intent, express or implied, to waive the lien. In *Zorn* v. *Livesley,* 44 Or. 501 (75 Pac. 1057), where the same issue was involved concerning property subject to a chattel mortgage, Mr. Justice BEAN says: "There is no doubt that the sale of a chattel by the mortgagor with the consent of the mortgagee, and with the intent on his part to relinquish the lien, would convey a good title." There is no prohibition in the statute against a sale of the logs. McIntire might lawfully have sold the logs subject to the lien, and have collected any proceeds therefrom without any consent of the lien-holders. Nor does it appear from the evidence that he undertook to sell the logs free and discharged of all liens, or that any of plaintiff's assignors so understood. In fact, it is not so alleged in the answer, and in that respect the twentieth finding is broader than the issue; and for that reason, if for no other, it must be set aside. But looking at this testimony in the most favorable light for respondent, and conceding, which we do not think is a fact, that it shows a consent on the part of the lien-holders to a sale, it must have been only to the extent that said logs should be converted into cash from which they expected to be paid, and to that extent it would be only a conditional consent upon the breach of which condition by the defendant it would lose all right to allege such consent as a defense.

In *Jones* v. *Webster,* 48 Ala. 109, where a mortgagor was authorized by the terms of the mortgage to sell mortgaged prop-

erty by a broker of his own selection, provided he turned the
proceeds over to the mortgagee, it was held that the mortgagee
could bring trover against a broker who denied the mortgagee's
right and refused to turn over the proceeds; and in *Oakes* v.
*Moore,* 24 Me. 214 (41 Am. Dec. 379), where plaintiff had a
lien amounting to a mortgage on logs and stood by and saw a
sale made, the court say: "In this case it would seem that he
witnessed the negotiation between their agent and Paine, and
saw that it was an arrangement professedly made with a view to
enable them to make payments to him; and doubtless expected
to realize therefrom the whole amount due him. He accordingly
seems to have waited till the termination of that contract, and,
not finding his expectations realized, demanded and sought to
regain possession of the logs. We do not see but he might well
do so. He had not, in express terms, relinquished his right to
the timber as secured by his contract; and, if he looked on, and
saw the owners making arrangements to dispose of it, it cannot
be doubted but that it was with an expectation raised by them
that he should have the avails of it to the extent of his claim.
They, having disappointed him in this expectation, should not
be permitted now to say that he has relinquished his right to
regain possession, nor to withhold from him the value of the
timber to the extent of his first demand." Finding no evidence
in the record to support this finding, a new trial of the case
becomes necessary, because there is no finding upon the issues
made by the pleadings as to whether defendant in sawing up the
logs did so without the express consent of the lienholders.

2. In view of a new trial, it becomes necessary to pass upon
a question suggested by defendant company in its brief, and
insisted upon at the argument, that the complaint does not state
a cause of action, for the alleged reason that plaintiff's right of
action is based on an assignment of a lien which had ceased to
exist on the destruction of the logs, and that in the place of the
lost lien is given a right of action for damgaes to the person who
was the lienholder at the time of the destruction of the logs,
which right of action would not be carried by assignment of the

lien. It must be remembered that liens were not filed until several days after the logs were taken away and sawed up by the defendant. Section 5677, B. & C. Comp., provides, in effect, that every person performing labor upon or who shall assist in obtaining or securing saw logs, etc., shall have a lien thereon for the work and labor done; and Section 5683 provides that every person, within 30 days after the close of the rendition of the services or after the close of the work, claiming the benefit thereof, must file for record with the county clerk of the county in which such saw logs, etc., were cut, a verified claim, the form of which shall be substantially that set out in said section. Construing these sections together, as they must be, the laborer in the first instance has a lien for a specified time without the assertion of any formal claim therefor, but, if he intends to preserve and perpetuate his lien, it is incumbent upon him to file the notice required by Section 5683: *Hughes* v. *Lansing,* 34 Or. 118 (55 Pac. 95: 75 Am. St. Rep. 574) ; *Horn* v. *United States Min. Co.* 47 Or. 124 (81 Pac. 1009).

3. Defendant contends, however, that by sawing the logs into lumber the lien thereon which had existed by force of the statute was thereby destroyed. But this cannot be true, for the logs were not in fact destroyed. By the sawing their identity was doubtless rendered difficult, uncertain or impossible; but the subject-matter of the lien still existed.

4. But, says defendant, "the assignment to plaintiff does not purport to assign the right to an action for damages. It is limited solely to the lien filed, and does not refer to a claim for damages. The right to an action for damages, therefore, if any exist, remains in the assignors, and defendant's liability, if any, is to them, and not to appellant." The remedial right here undertaken to be enforced is purely statutory, being authorized by Section 5692, B. & C. Comp., which is as follows:

"Any person, firm or corporation who shall injure, impair or destroy, or who shall render difficult, uncertain or impossible of identification, any saw logs, upon which there is a lien, as herein provided, without the express consent of the person entitled to such lien, shall be liable to the lienholder for the damages

to the amount secured by his lien, which sum may be recovered by an action against such person, firm or corporation, without bringing the suit as provided for in Section 5687."

By the express provisions of this section the remedy is for an injury to the lien, which consists in having rendered it difficult or impossible for the lienholder to secure the benefit of a foreclosure of his lien as provided elsewhere in the statute, and is not for an injury to a right in the property, and likewise the remedy is given to the lienholder. For these reasons, it is an incident of the lien itself, and an assignment of the lien must necessarily carry with it the right to the remedy, although the alleged injury was committed before the assignment. "In the absence of any stipulation or provision in the contract of assignment concerning the securities or other incidents, an unqualified assignment of a chose in action carries with it, as an incident to the chose, all securities held by the assignor as collateral to the claim, and all rights incidental thereto. * * As the right to the chose and its incidents pass to the assignee thereof, so does the right to the remedies which the assignor had for the enforcement of the same": 4 Cyc. 69-71. Under this view of the law, the right of action for the injury to the lien was vested in the plaintiff by the assignment alleged.

5. Again, defendant urges that the complaint is fatally defective because it is claimed there is no allegation therein that the lien notice was filed within 30 days after the close of the rendition of the work, as required by Section 5683 of the statute, and which is admittedly a jurisdictional fact. The complaint does not contain any distinct formal allegation to that effect, but there is set out in the body thereof a copy of the lien notice which contains this statement:

"That said labor and assistance were so performed and rendered upon said property between the 12th day of March, 1904, and the 12th day of September, 1904, and the rendition of said services was closed on the 12th day of September, 1904, and thirty days have not elapsed since that time."

In the absence of a demurrer, the foregoing statement, being a part of the complaint, should at least be considered as amount-

ing to a defective statement of the facts therein recited and sufficient to sustain the complaint against an objection made here for the first time.

6. It is urged by appellant that judgment in his favor be directed, but the findings made and unchallenged will not support a judgment in favor of either party, for the reason that there is no finding upon the material issue as to whether or not the defendant sawed up the logs without the express consent of the lienholders, which is alleged by plaintiff and denied by defendant. That fact has not been determined, and it is the function of the trial court to do that. It is not within the province of this court to make findings in law actions upon disputed questions of fact: *Scott* v. *Ford,* 45 Or. 531 (78 Pac. 742, 80 Pac. 899 : 68 L. R. A. 469). Moreover, assuming that it was necessary that a lien should·be filed before this action could be maintained, it must have been filed within 30 days after the close of the rendition of the services, and, as this fact is averred in the complaint and denied by the answer, it is a material issue. But there is no finding determinative of that issue. As to Miller, the finding is:

·"That between March 12, 1904, and September 12, 1904, Frank Miller performed labor and rendered services for defendant McIntire, * * for 131½ days, * * and (on) said September 20, 1904, said Miller filed in the office of the County Clerk of Columbia County the notice of lien," etc.

It cannot be ascertained from this finding as to when the services closed. They might have terminated more than 30 days prior to September 20, 1904, and still the finding be true.

For these reasons, the judgment should be reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with this opinion.             REVERSED.