Argued May 23, reversed and remanded July 30, respondent
Transamerica Life and Annuity's reconsideration denied August 21,
petition for review denied September 5, respondent Thompson's
reconsideration denied September 6, petition for review denied October 16,
1979

LARSON, et al,
*Appellants,*
*v.*
TRANSAMERICA LIFE & ANNUITY
INSURANCE CO.,
*Respondents.*

(No. A7608-12032, CA 11487)

597 P2d 1292

Patric J. Doherty, Portland, argued the cause for appellants. With him on the briefs was Rankin, McMurry, Osburn, Gallagher & VavRosky, Portland.

James H. Clarke, Portland, argued the cause for respondent Transamerica Life & Annuity Insurance Co. With him on the brief were Richard S. Borst, Stephen L. Wilson, and Spears, Lubersky, Campbell & Bledsoe, Portland.

Elizabeth K. Reeve, Portland, argued the cause for respondent Norman Thompson. With her on the brief were Wayne A. Williamson, Ridgway K. Foley, Jr., and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Plaintiffs brought this action against Transamerica Life & Annuity Insurance Co. (Transamerica) and Norman Thompson to recover on an insurance policy written on the life of Robert Williams. Transamerica denied coverage on the ground that Williams had committed suicide. Plaintiffs filed a total of five complaints. In response to each, Transamerica filed motions to strike and Thompson demurred. In all instances but one some or all of plaintiffs' counts were stricken. (The first amended complaint was filed before the court ruled on the challenges to the original complaint.) After sustaining Thompson's demurrer and Transamerica's motion to strike every count of plaintiffs' fourth amended complaint, the trial court refused plaintiffs permission to plead over, and the action was dismissed. Plaintiffs appeal.

As a fact summary, we quote the following allegations from plaintiffs' fourth amended complaint:

"At all material times Defendant Norman Thompson, hereinafter referred to as Defendant Thompson, acted for Defendant Transamerica Life & Annuity Insurance Co., hereinafter referred to as Defendant Transamerica, as its agent, and acted within the scope and course of his agency. At all material times Defendant Thompson acted as agent for the Plaintiffs in handling their life insurance needs and Plaintiffs relied upon his skill and judgment in selecting and recommending a life insurance policy commensurate with those needs.

"On or about June 12, 1969 Plaintiff Glenn L. Larson and one Edward G. Davis purchased from Defendant Transamerica through Defendant Thompson one annually renewable and convertible term life insurance policy with a face amount of $100,000 on the life of one Robert W. Williams. Policy No. 6146-90 was issued and Plaintiff Larson and Davis were named as beneficiaries on the policy.

"On January 13, 1970 Plaintiff Larson and Davis assigned one-half of each of their interests in the policy to Plaintiff Bennett & Williams, Inc.

"On February 8, 1974 Davis assigned his one-quarter interest in the policy to Plaintiff Larson.

"Transamerica Policy No. 6146-90 provided, in pertinent part:

" 'INCONTESTABILITY—his policy shall be incontestable after it has been in force during the lifetime of the insured for two years. . .

" 'SUICIDE—If the insured dies by suicide, while sane or insane, within two years from the date of issue of this policy, the liability of the company shall be limited to the amount of the premiums paid'.

"The two year period under both provisions of this policy expired on June 12, 1971.

"On May 28, 1974, Defendant Thompson wrote to Plaintiff Larson and informed him that the policy was in its fifth renewal year; that the Transamerica policy provided for 'renewal' beyond its fifth renewal year 'to an Occidental Life Insurance Company Policy' but that by 'continuing with Transamerica' instead of exercising the renewal option with Occidental Life, the rates would be much lower; and that to take advantage of these lower rates Mr. Williams should schedule himself for a physical examination in order to qualify for the lower rates with Defendant Transamerica. Defendant Thompson attached to said letter a cost comparison chart which had been prepared by Defendant Transamerica. He had been instructed to forward the chart to Plaintiffs by Defendant Transamerica.

"In reliance upon Defendant Thompson's recommendations and representations, Plaintiffs and Robert W. Williams made application to 'continue' with Transamerica, rather than 'renew' with Occidental Life. The contract of insurance applied for was identical in type and face amount of coverage to Transamerica Policy No. 6146-90.

"Thereafter, on August 12, 1974, Transamerica Policy No. 33382-90 was issued by Defendant Transamerica and forwarded to Plaintiffs. Said policy contained identical provisions to those contained in Policy No. 6146-90, including identical Incontestability and Suicide clauses.

[314]

"On October 31, 1975 Robert W. Williams, the insured under said contract of insurance, died by his own hand.

"Due proof of loss was submitted to Defendant Transamerica after the death of Robert W. Williams. Defendant Transamerica has since failed and refused to pay to Plaintiffs the proceeds of Policy No. 33382-90, contending that Williams died by suicide; that two years had not expired from the date of issuance of Policy No. 33382-90, that is, August 12, 1974; and that, therefore, coverage under said policy was excluded.

"Defendant Thompson knew or should have known of the effect of issuing Policy No. 33382-90 on the Suicide and Incontestability clauses as set forth in Paragraph XII below.

"Defendants failed to advise Plaintiffs that, by continuing with Transamerica Policy No. 33382-90 instead of converting to an Occidental Policy, the two year Incontestability and Suicide clauses which had expired under Policy No. 6146-90 on June 12, 1971, would commence to run anew from August 12, 1974, the date of issuance of said Policy No. 33382-90."

Plaintiffs first argue that the trial court erred in striking the following allegation in count III of its first amended complaint:

"Plaintiffs and Defendants mutually agreed to extend Policy No. 6146-90. Thereafter, for valuable consideration, policy No. 33382-90 was issued evidencing said extension. As the two policies constituted together but one contract of insurance, the suicide clause had expired as of the date of Robert W. Williams' death."

The trial court struck that allegation on the ground that it failed to allege facts sufficient to constitute a cause of action.

■ Because the issue is the sufficiency of plaintiffs' pleading, we must presume that the facts alleged are true. *Berkheimers v. Citizens Valley Bank*, 270 Or 807, 529 P2d 903 (1974). If policy number 33382-90 was *by agreement of the parties* an extension of policy number

6146-90, the two year suicide clause would have expired by the date of Williams' death.

■■ Defendants contend that policy number 33382-90 was not an extension of policy number 6146-90 because Williams was required to take a physical examination prior to issuance of the new policy and because the two policies had different numbers and premium amounts. Although the requirement of a physical exam may be a factor to consider in determining if one policy is an extension of another in the absence of an agreement *(see Binkley v. Manufacturers Life Insurance Co.,* 471 F2d 889 (10th Cir 1973)), it is not determinative if the parties agree that the later policy is nevertheless a continuation of the earlier. The same is true of the policy numbers. We doubt that the amount of the premium would be a significant factor to consider even if there were no agreement. In this instance the fact that the premium under the later policy was lower, when considered along with Thompson's statement that it would be to plaintiffs' advantage to "continue" with Transamerica, suggests that coverage under the Occidental policy and under the "new" Transamerica policy would be the same. (Under the Occidental policy, had it been issued as a continuation of the old policy, there would have been no effective suicide clause.)

Defendants argue that the allegation of a mutual agreement that the later policy was to be an extension of the earlier was inconsistent with other factual allegations incorporated in count III of the amended complaint. For example, they argue that it was inconsistent with the allegation that Thompson said it would be to plaintiffs' advantage to "continue" with a *"new"* policy. The trial court did not base its decision on that ground, and we see no inconsistency. Whether the parties agreed that the later policy was to be an extension of the earlier even though it was referred to as a "new" policy is a question of fact that should not have been determined on a challenge to the complaint.

[316]

On remand, the trial court should allow plaintiffs to reallege the "extension" theory.

■ Plaintiffs next argue that the trial court erred in striking (and in sustaining Thompson's demurrer to) the allegations in its fourth amended complaint on the ground that each failed to state a cause of action.

As a first cause of action plaintiffs alleged in material part that

"By reason of [defendants' failure to advise Plaintiffs that the two year incontestability and suicide clauses would commence to run anew from August 12, 1974, the date of issuance of policy number 33382-90] and by reason of Defendant Thompson's recommending that Plaintiffs 'continue' with Transamerica rather than 'renew' with Occidental, and by reason of the cost comparison chart prepared by Defendant Transamerica and forwarded by Defendant Thompson for Plaintiffs' use in deciding whether to 'continue' with Transamerica or 'renew' with Occidental, Defendant Transamerica is estopped from relying on the Incontestability and Suicide clauses contained in Policy No. 33382-90."

In count one of their second cause of action plaintiffs alleged that defendants were negligent in the following particulars:

"(a) In recommending and selecting a life insurance policy for Plaintiffs which, unbeknownst to Plaintiffs, had the effect of lessening the existing coverage in that the two-year Suicide clause exclusion which had expired under Transamerica Policy No. 6146-90 would commence to run anew for two years from August 12, 1974, the date of issuance of Transamerica Policy No. 33382-90.

"(b) In failing to advise Plaintiffs of the effect on the Suicide clause of 'continuing' with Transamerica as opposed to 'renewing' with Occidental."

In count two they alleged that Thompson, acting on behalf of plaintifs as their agent:

"(a) Failed to exercise reasonable care, skill and diligence in effecting adequate and suitable life insurance coverage for Plaintiffs; and

[317]

"(b) Failed to advise Plaintiffs of all material information relative to their decision of whether to 'continue' with Transamerica or to 'renew' with Occidental."

In count three of their second cause of action plaintiffs alleged:

"Defendant Thompson agreed to select and procure a life insurance policy which would be adequate and suitable for Plaintiffs' life insurance needs.

"By recommending and selecting Transamerica Policy No. 33382-90, Defendant Thompson failed to procure adequate and suitable life insurance coverage for Plaintiffs' life insurance needs."

The trial court sustained defendants' challenges to those allegations on the ground that Thompson had neither misrepresented nor concealed the effect of the suicide clause and that he had no duty to inform plaintiffs that the suicide exclusion would begin to run anew. We do not understand how the existence of a duty to inform bears on Thompson's potential liability for failure to procure adequate and satisfactory insurance as he allegedly agreed to do. *See Joseph Forest Products v. Pratt*, 278 Or 477, 564 P2d 1027 (1977). Accepting the alleged facts as true, those portions of the fourth amended complaint alleging negligence or breach of agency duties by reason of Thompson's failure to procure adequate and satisfactory insurance do state a cause of action. *Joseph Forest Products v. Pratt, supra.*

The remaining question with respect to the fourth amended complaint is whether Thompson had a duty to advise plaintiffs that Transamerica would enforce a two-year suicide clause from the date of issuance of the "new" policy. Under the circumstances, we conclude that he did have such a duty. In his May 28, 1974, letter, Thompson attempted to sell plaintiffs insurance with Transamerica as an alternative to the Occidental policy to which they had a right to convert. He claimed it would be to plaintiffs' benefit to "continue" with Transamerica because of lower rates. He

[318]

enclosed a "cost comparison chart." However, at least one significant distinction between the two alternatives was never mentioned, *i.e.*, that the insurer intended the suicide exclusion to run anew. Defendants concede that liability or estoppel can be based on "half-truths." We think that description well characterizes Thompson's statements.

Defendants argue that plaintiffs failed to allege that they would have chosen the Occidental policy instead of Transamerica coverage had they known of the additional two year suicide exclusion. Although that fact is implicit in the complaint, it is true that plaintiffs did not expressly plead it. The point was not, however, raised below. Had the trial court perceived that as the only deficiency in the complaint, it may well have allowed plaintiffs to make explicit what was clearly implicit. We will not, therefore, treat that ground as a basis to support the judgment.

We note that this case is distinguishable from *Knappenberger v. Cascade Ins. Co.*, 259 Or 392, 487 P2d 80 (1971), on which the trial court relied. Under the circumstances of this case, a thorough reading of policy number 33382-90 would not have disclosed clearly and unambiguously that there would be an additional two-year suicide exclusion.

■  Plaintiffs also argue that the court erred in striking a count of their amended complaint based on the doctrine of "honoring reasonable expectations." Oregon courts have never recognized such a doctrine in the insurance context, as distinct from contract, waiver and estoppel theories, and we see no reason to do so in this case either, because the "reasonable expectations" allegations are subsumed under the estoppel theory.

■  Finally, plaintiffs argue that the court erred in sustaining defendants' challenges to a count in the amended complaint alleging in material part:

"By reason of the representations and nondisclosures of Defendants concerning the terms of

[319]

Policy Number 33382-90, or the facts that said policy would contain a suicide clause at the time of the making of the insurance contract, said suicide clause having once run, Defendants waived the provisions of said suicide clause."

That was not error. Plaintiffs argue that we must presume there was a waiver, because that is what they alleged. That is not the rule. We do presume that factual allegations are true, but the allegation that "[d]efendants waived the provisions of said suicide clause" is a legal conclusion. *Zorn v. Livesley*, 44 Or 501, 75 P 1057 (1904). We cannot presume that it is true, and we must look instead to the underlying factual allegations to determine if a cause of action was stated. *Zorn v. Livesley, supra.* Waiver cannot be based on nondisclosure. *Waterway Terminals v. P.S. Lord*, 242 Or 1, 406 P2d 556 (1965). There were no representations alleged from which a waiver could be found. In fact, plaintiffs alleged that

"[d]efendant Thompson made no mention in his letter, or at any other time, of any factor other than cost to be considered by Plaintiffs in determining whether to 'renew' the original policy under its terms and provisions to an Occidental policy, or to 'continue' with a new policy from Transamerica.

"In particular, Defendant Thompson failed to advise Plaintiffs or disclose to them the effect each course of action would have on the period of incontestability and the exclusion from coverage for death by suicide under the two insurance coverages."

Reversed and remanded.