Argued and submitted November 7, affirmed in part,
reversed and remanded December 29, 1980,
reconsideration denied February 4,
petition for review denied April 7, 1981 (290 Or 727)

# McDONALD et al,
## *Appellants,*
### *v.*
# TITLE INSURANCE COMPNAY
# OF OREGON,
## *Respondent.*

## (No. A7905-02190, CA 17341)

621 P2d 654

1056

Paul R. Romain, Portland, argued the cause for appellants. With him on the briefs was Ragen, Roberts, O'Scannlain, Robertson & Neill, Portland.

Bruce A. Rubin, Portland, argued the cause for respondent. With him on the brief was Miller, Nash, Yerke, Wiener & Hager, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiffs appeal from a judgment for the defendant Title Insurance Company. The trial court sustained the defendant's demurrer to the first (negligence) and third (estoppel) counts of plaintiffs' amended complaint. A second count, alleging fraud on the defendant's part, was dismissed upon the plaintiffs' own motion. We conclude that the complaint states a cause of action for negligence.

For purposes of this appeal, we accept as true the allegations of fact in the complaint. Plaintiffs are the buyers of a newly constructed home. Defendant is engaged in the business of selling title insurance and handling escrow accounts for the transfer of real property. On November 1, 1977, plaintiffs retained the defendant to assist them in closing the purchase of their new home. Prior to closing plaintiffs visited the escrow officer handling their account. They informed the officer that, according to their information, some of the subcontractors involved in the construction of the home had not been paid for their work and were about to file construction liens against the builder/seller. Plaintiffs told the escrow officer that they were hesitant about closing the transaction before the builder had met all of his obligations to its subcontractors. The escrow officer told plaintiffs that they need not be concerned about closing the transaction before all the subcontractors had been paid, because that was a problem for the builder alone. She then advised plaintiffs to proceed with the closing.

The sale was completed on December 2, 1977. Within ninety days after the completion of the house, statutory construction liens in the amount of $28,764.32 were filed against the subject property by various subcontractors. Plaintiffs were forced to satisfy those liens.

In addition to their escrow services defendant also furnished to plaintiffs a title insurance policy for the property in question. The policy was issued on December 2 but plaintiffs claim not to have received it until December 19. The policy expressly excludes liens created after the date of issuance. It also excludes liens or claims known to the insured before closing or at the date of the policy and not

shown by public record unless the insured discloses in writing the existence of such claims or liens to the title insurance company before the policy is issued.

We turn first to plaintiffs' claim of estoppel. It is undisputed that the liens in question are not covered by the title insurance policy. The liens were not created until after the date of the policy and the plaintiffs did not notify the defendants in writing of the potential claims. Despite these express exclusions, plaintiffs nevertheless claim that:

> "Because of defendant's failure to disclose the requirements contained in the policy, upon which requirements defendant's liability was contingent, and because of the reliance by plaintiffs on the representations made by defendant regarding liability for construction liens and advising plaintiffs to proceed with the closing of the house, defendant should be estopped from relying on the terms of the insurance contract to deny coverage to plaintiffs."

■ Plaintiffs are not suing the defendant on the insurance contract. Therefore, the claim that the defendant should be estopped from relying on the terms of the contract to deny coverage would seem unnecessary. In any event, the claim of estoppel is inapplicable because, as was stated in *Wyoming Sawmills v. Transportation Ins. Co.,* 282 Or 401, 410, 578 P2d 1253 (1978),

> "[w]aiver or estoppel cannot be the basis for creating an original grant of coverage where no such contract previously existed."

*See also Schaffer v. Mill Owners Ins. Co.,* 242 Or 150, 156, 407 P2d 614 (1965); *Perez v. State Farm Mutual Ins. Co.,* 43 Or App 19, 22-23, 602 P2d 284 (1979), *aff'd* 289 Or 295, 613 P2d 32 (1980).

■ The defendant is not foreclosed from relying on the terms of the policy where a claim of liability is asserted on that basis. The liens in question are specifically excluded from coverage. This exclusion, however, does not affect other claims, such as negligence and fraud, which might be available to the plaintiffs.

■■ We turn now to plaintiffs' claim of negligence. In order to state a cause of action in negligence, plaintiffs must allege that the defendant owed them a duty, that the defendant breached this duty, and that the breach was the

cause in fact of some legally cognizable damage to plaintiffs. *Brennen v. City of Eugene,* 285 or 401, 405, 591 P2d 719 (1978). Whether a duty exists in any given case is a question of law for the court to decide. *Yanzick v. Tawney,* 44 Or App 59, 62, 605 P2d 297 (1980), *rev den* 288 Or 667 (1980).

■ In this case, although plaintiffs claim that the parties were engaged in a relationship of a fiduciary nature, the existence of a duty cannot be based upon defendant's role as an escrow agent or a provider of title insurance. An escrow holder, by definition, is a neutral party with no obligation to either party to the transaction except to carry out the terms of the escrow instructions. "They owe no duty to advise the parties on their legal rights * * * [and] [t]hey have no reason to protect the rights of any one party as against another." *State Bar v. Security Escrows, Inc.* 233 Or 80, 82, 377 P2d 334 (1962); *see also Banif Corporation v. Black,* 12 Or App 385, 507 P2d 49 (1973). As a provider of title insurance, defendant's obligation was defined by the policy it issued.

Plaintiffs make a further claim of duty, based upon the fact that the defendant through its agent voluntarily assumed the responsiblity of advising plaintiffs on the legal liability for the subcontractors' liens. Plaintiffs do not claim that the defendant was under an obligation to so act, or that this is a case involving failure to perform some act. Rather, plaintiffs claim that defendant, once it had chosen to give advice to the plaintiffs, assumed a duty of exercising reasonable care in providing such advice. This is the familiar "rescue" doctrine.

■ In *Brennen v. City of Eugene,* 30 Or app 1093, 1098, 569 P2d 1083 (1977), *rev on other grounds* 285 Or 401, 591 P2d 719 (1978), we stated that:

> "The person who voluntarily undertakes to aid another, absent a duty to do so, assumes only a duty to avoid making the situation worse than it was prior to his undertaking. He does not become legally bound to successfully complete the rescue, *see* Prosser, Law of Torts, 343 (4th ed 1971), but only to avoid causing harm by his attempt. * * *"

In this case, we conclude that, because the defendant voluntarily chose to advise plaintiffs regarding responsibility for

the liens, it assumed a duty of exercising due care in the giving of that advice. Defendant claims that no duty existed because nothing in the complaint demonstrates that the voluntary advice made the situation worse. It claims that the liens would have been filed regardless of the advice given. However, this is not the issue. The advice is related not to the actual filing of the liens, but to the decision to go ahead with the closing despite the fact that the potential claims existed.

■ In *Brennen* we noted that, in order to state a cause of action in negligence based upon the voluntary giving of aid, a person must allege in some way that the defendant's action placed him in a worse position than he would have been without the aid given. We stated that "[t]his usually takes the form of an allegation of reasonable reliance or of inhibition of protective acts by others." *Id.*, at 1099. In this case, plaintiffs allege that they relied on defendant's escrow officer's representations, which they reasonably believed to be made within the scope of her professional duties, in proceeding with the closing. Their complaint reveals that they were hesitant about closing the deal because of the obligations owed to the subcontractors. We think the fairest reading of the complaint is that the plaintiffs relied on the defendant's advice and proceeded with the closing even though the subcontractors had not been paid because they believed the contractor, and not they, would be liable. A further fair reading is that, without defendant's advice, plaintiffs would not have closed until after the 90-day period or at least until after obtaining competent advice. Thus, their situation was made worse by the advice given.[1]

---

[1] Plaintiffs contend that because this case is before us on demurrer, "* * * we must assume the truth of all plaintiffs' well pleaded allegations and any facts that might conceivably be adduced as proof of such allegations." *Brennen v. City of Eugene,* 285 Or 401, 405, 591 P2d 719 (1979); *Mezyk v. National Repossessions,* 241 Or 333, 337, 405 P2d 840 (1965). Defendant maintains that because the plaintiffs chose not to replead "* * * we must premise that plaintiff has stated his case as strongly as the facts will permit, and the complaint must therefore be construed most strongly against the plaintiff." *Sponseller v. Meltebke,* 280 Or 361, 363-364, 570 P2d 974 (1977).

In a recent case, *Adams v. Oregon State Police,* 289 Or 233, 239-140, 611 P2d 1153 (1980), the court noted that it "* * * has not been entirely consistent in its

 Defendant also contends that plaintiffs could not justifiably rely on the escrow officer's legal advice because escrow officers have no authority to give such advice. It claims that justifiable reliance is the key to any attempt to state a claim based upon voluntarily offered services. The defendant relies on the Restatement of Torts, which states that:

> "One who gratuitously gives transportation to another, or otherwise renders gratuitous services to him, is not subject to liability to him for his failure to have the competence or to exercise the skill normally required of persons doing such acts, if the other who accepts the services is aware, through information given by the actor or otherwise, of his incompetence. However, a contract to render services, or a gratuitous offer to render them, or even merely giving them at the other's request, may carry with it a profession or representation of some skill and competence; and if the actor realizes or should realize that his competence and skill are subnormal, he must exercise reasonable care to inform the other. * * *" Restatement of Torts 2d, § 323 comment b (1966).

We read this limitation of liability as applying only when the person accepting the gratuitous services knows the person rendering them is incompetent to do so. As we have already noted, plaintiffs' complaint alleges that they reasonably believed the advice to be within the competence of defendant's escrow officer. Whether their belief was reasonable or not or whether they were negligent in relying on defendant's advice is an issue of fact to be determined at trial. We decline to hold that, as a matter of law, the plaintiffs did not or could not rely on the defendant's representations.

Having determined that a duty of care existed on the defendant's part we turn to an examination of the particular allegations of negligence.

---

assessment of the sufficiency of allegations tested by general demurrer." However, it declined to adopt a firm rule in that case. The court did take note of the "* * * legislatively directed trend away from strict construction of the pleadings." *Id.* at 240.

In this case, we conclude that once it is assumed that the facts are true our result is not affected by the standard applied. Thus, even if we construe the complaint against the plaintiffs, a cause of action for negligence is stated.

Plaintiffs claim that:

"Defendant, by and through its employee, Kaye M. Waldron, was negligent in one or more of the following particulars:

"(1) In representing to plaintiffs that they need not be concerned about closing the transaction before all subcontractors had been paid because the payment of the subcontractors was a problem solely for Southern Gulf Corporation, and in advising plaintiffs to proceed with the closing notwithstanding the fact that the subcontractors had not been paid;

"(2) In failing to delay the closing of the transaction until the statutory period for the filing of construction liens had run, or at least to advise plaintiffs that this option was available for their protection.

"Defendant, as provider of the title insurance policy, was negligent in one or more of the following particulars:

"(1) In failing to procure for plaintiffs an ALTA title insurance policy which would have insured plaintiffs against the subsequent filing of the construction liens, or at least to advise plaintiffs that such a policy was available;

"(2) In failing to require the Southern Gulf Corporation maintain a sufficient sum in the escrow account following the closing to satisfy all construction liens that may be filed, or at least to advise plaintiffs that this option was available for their protection."

■ We conclude that only the first of these claims is sufficient. We note that this is not a case where an insurance agent has agreed to procure a particular type of insurance for the insured and then fails to do so. *Joseph Forest Products v. Pratt,* 278 Or 477, 480, 564 P2d 1027 (1977); *Franklin v. Western Pac. Ins. Co.,* 243 Or 448, 450, 414 P2d 343 (1966); *Precision Castparts v. Johnson,* 44 Or App 739, 742-743, 607 P2d 763 (1980). Neither is it a case where the agent has a duty to explain or warn the insured about a particular policy provision. *See Precision Castparts v. Johnson, supra,* 44 Or App at 743; *Larson v. Transamerica Life,* 41 Or App 311, 318-319, 597 P2d 1292 (1979), *rev den* 287 Or 301 (1979). As plaintiffs concede on appeal, the defendant was under no affirmative obligation to act in any way for plaintiff's benefit with the exception of following the escrow instructions. Likewise, it had no affirmative duty to advise plaintiffs of any options that might be

available to them, at least until the advice was given. A duty existed only with respect to the advice given.

■ The next question is whether plaintiffs have alleged facts from which it can be inferred that the defendant breached its duty to plaintiffs. The parties do not discuss this issue in their briefs on appeal. Defendant advised plaintiffs to go ahead with the closing because the builder would be responsible for any liens that might be filed by the subcontractor. This representation was wrong; after purchasing the home, the plaintiffs became liable for the liens. Plaintiffs allege that the defendant was negligent in the giving of this advice. A jury might reasonably conclude that the escrow officer should have foreseen that her advice to go ahead with the closing despite the impending claims would lead to the result that occurred in this case. Thus, assuming the plaintiffs are able to prove their factual allegations at trial, we cannot say that as a matter of law no breach of duty occurred. *See Brennen v. City of Eugene, supra,* 285 Or at 412-413.

■ ■ Finally, in order for there to be a cause of action in negligence, a complaint must also allege facts which establish that defendant's advice was a substantial factor in causing plaintiffs' harm. *Yanzick v. Tawney, supra,* 44 Or App at 64. Plaintiffs alleged that they relied on the defendant's advice in proceeding to finalize the sale of the house. On this basis we conclude that a jury could find that the defendant's unreasonable or faulty advice was a substantial factor in plaintiff's decision to go ahead with the closing before the subcontractors had been fully paid, thus exposing themselves to liability for the subcontractor's claims.[2] There is no claim that the plaintiffs did not become legally responsible for the liens or that they did not, in fact, pay the amount claimed in satisfaction of those liens.

We conclude that plaintiffs' complaint does state a cause of action for negligence with respect to the advice voluntarily given by the defendant's escrow officer to the plaintiffs. Once having undertaken to give advice, the

---

[2] In its discussion of the issue of causation, the defendant renews its claim that it was not responsible for the filing of the liens. As we previously noted, that is not the issue before us; the issue is whether their advice was a substantial factor in plaintiffs' decision to proceed to closing despite the potential claims.

defendant was under an obligation to proceed with a reasonable degree of care.

Affirmed in part, reversed and remanded in part.