Argued and submitted October 6, 1986, reversed and remanded September 9,
reconsideration allowed by opinion December 30, 1987
See 89 Or App 117 (1987)

## C.I.S. NORTHWEST, INC.,
*Appellant,*

*v.*

## BERJAC OF PORTLAND, INC.,
*Respondent.*

(A8501-00356; CA A38096)

742 P2d 618

George W. McLean, Jr., Seattle, Washington, argued the
cause and filed the briefs for appellant.

James P. Laurick, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff, an insurance broker, brought this action against defendant, an insurance premium financing company, to recover money that it had paid to defendant pursuant to defendant's demand under ORS 746.515. The trial court dismissed the complaint for failure to state ultimate facts sufficient to constitute a claim. ORCP 21A(8). We reverse.

We assume that the facts pleaded in plaintiff's complaint are true. *Sommerfeldt v. Trammell,* 74 Or App 183, 187, 702 P2d 430 (1985). The complaint alleges that Trans-Carrier Insurance Agency requested plaintiff to locate insurance companies that would provide insurance for Trans-Carrier's clients. Plaintiff did so and, after the policies were issued, Trans-Carrier asked defendant to finance the premiums on some of the policies.[1] Defendant entered into contracts with Trans-Carrier's clients under which it agreed to provide premium financing. Before defendant had paid the premiums pursuant to the financing agreements, plaintiff directed defendant to pay the premiums to plaintiff, not to Trans-Carrier, and stated that Trans-Carrier had no authority to collect the premiums for plaintiff. In spite of that notice, defendant paid the premiums to Trans-Carrier, which did not forward them to plaintiff. Plaintiff also alleged that Trans-Carrier was a broker and was not an appointed agent for plaintiff or the insurance companies that issued the policies.

Trans-Carrier subsequently lost its license to conduct insurance business. The insurance companies cancelled the policies before they expired, whereupon defendant demanded that plaintiff, as representative of the insurance companies, "return" to it the unearned premiums that defendant had financed and paid to Trans-Carrier, pursuant to ORS 746.515(1).[2] The insurance companies involved have

---

[1] Under a premium financing agreement, the insured pays a portion of the premium as a down payment and the premium financing company finances the balance, for which the insured signs a promissory note.

[2] ORS 746.515(1) provides:

"Whenever a financed insurance policy is canceled, the insurer who has been notified as provided in ORS 746.475(4) shall return whatever gross unearned premiums are due under the insurance policy to the premium finance company for the account of the insured or insureds not later than the 30th day after the date of cancellation. If the insurer elects to return the premium through the agent, the

assigned their rights to plaintiff. Plaintiff paid an amount equal to the unearned premiums to defendant, because it believed that ORS 746.515 required it to do so, and then brought this action to recover the money from defendant.

Plaintiff alleges three claims, in the alternative: (1) for a declaration that, if the statute requires that plaintiff pay unearned premiums that were not paid to it or its agent by defendant, the statute is unconstitutional; (2) breach of contract, in that plaintiff was a third-party creditor beneficiary of the financing contracts between defendant and the insureds; and (3) negligence on the part of defendant in paying premiums to Trans-Carrier with knowledge that Trans-Carrier was not the agent of plaintiff or the insurers and that Trans-Carrier would not forward the money to plaintiff.

■     The initial question is whether ORS 746.515 required plaintiff to pay the amount of the unearned premiums to defendant, even though plaintiff had notified defendant that Trans-Carrier was not authorized to collect premiums for plaintiff and that defendant should pay the premiums directly to plaintiff. Plaintiff first argues that Trans-Carrier was neither its nor the insurers' agent and that, therefore, defendant's payment to Trans-Carrier did not constitute payment to plaintiff. An "agent" is defined in ORS 731.062:

> " 'Agent' means a person appointed by an insurer to solicit applications for insurance or to negotiate insurance on its behalf, and, if authorized so to do by the insurer, to effect and countersign insurance policies."

Neither plaintiff nor the insurers appointed Trans-Carrier to solicit insurance on their behalf. Rather, Trans-Carrier, a broker, requested that plaintiff, also a broker and agent for the insurance companies, locate insurers that would insure Trans-

---

agent shall transmit the unearned premium to the premium finance company within the 30-day period. The insurer, on written notice of any failure of the agent to transmit the premium and not later than the 30th day after the notice, shall pay the amount of return premium directly to the premium finance company."

ORS 746.475(4) provides:

"A premium finance company shall give notice of its financing to the insurer not later than the 30th day after the date the premium financing agreement is received by the premium finance company. A notice given under this subsection shall be effective whether or not the insured's policy number is set forth in the notice."

Carrier clients. Each party represented its own interest and clients. Although an agency relationship may be created by implication, custom, estoppel or ratification, *see Ramstead v. North-West Insurance,* 252 Or 423, 450 P2d 538 (1969), none of those situations is present here.

The original definition of "agent" in the Insurance Code included one who collects premiums on behalf of an insurer. Or Laws 1917, ch 203, § 4a(1); *see Paulson v. Western Life Insurance Co.,* 292 Or 38, 54, 636 P2d 935 (1981). In 1967, the Insurance Code was reorganized and the definition of "agent," other than an appointed agent, was consolidated in ORS 744.165(1). The part of the definition referring to one who collects premiums has been deleted. Defendant argues that Trans-Carrier was plaintiff's agent for purposes of premium collection by virtue of ORS 744.165(1):

> "Except as provided in a group contract of insurance under subsection (2) of this section, any person who solicits or procures an application for insurance shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured. Any provisions in the application and policy to the contrary are invalid and of no effect whatever."

That statute, as well as its predecessors, creates an agency, apart from the common law, for limited purposes when one "solicits or procures" an application for insurance. *Paulson v. Western Life Insurance Co., supra,* 292 Or at 60. Apparently, it matters not whether the solicitation is made on behalf of the insurer or the insured. The agency so created is limited to matters relating to an application for insurance and the policy issued in consequence of the application. The statute has been applied only to misstatements on applications for insurance and interpretation of policy language. *Hiransomboon v. Unigard Mutual Ins. Co.,* 46 Or App 493, 497, 612 P2d 306 (1980). Presumably, it would apply to representations made by the "agent" to the insured. Assuming that Trans-Carrier comes within the statute for those limited purposes, there is nothing in it that creates an agency relationship between Trans-Carrier and plaintiff for the purpose of collecting premiums from defendant. Accordingly, defendant's payment to Trans-Carrier did not make it plaintiff's agent.

Defendant, however, contends that it is not necessary that Trans-Carrier be an agent of plaintiff under the terms of ORS 746.515. We do not agree that the statute requires an insurer to "return" unearned premiums if no premiums have been paid to it or its agent. Not only would that make no sense, but the return of something necessarily implies that it has been received.

Defendant also contends that, if it is necessary to find an agency relationship, the legislature has designated Trans-Carrier plaintiff's agent for the purpose of allocating the burden of returning the unearned premiums. This conclusion follows, it argues, because the last two sentences of ORS 746.515(1) provide that "if the insurer elects to return the premium through the agent" and the agent fails to transmit it to the financier, then the insurer is required to pay the premium directly to the financier. That provision *assumes* an agency relationship between the insurer and one to whom the insurer returns the premium for transmittal to the financier; it does not create one. Imposing liability on the principal for the default of its agent is consistent with well-established common law principles.

Finally, defendant contends that *Bonneville Auto Ins. v. Ins. Div.,* 53 Or App 440, 632 P2d 796 (1981), requires that plaintiff be held responsible to it under the statute. However, there is a critical distinction: in that case, the one who collected the premiums from the premium financier and who failed to pay them to the insurer was the licensed agent of the insurer. We said:

> "Either [Bonneville] or Berjac must ultimately bear the loss from [the agent's] misuse of financed premiums. [The agent] was [Bonneville's] licensed agent, although it may also have been Berjac's. Despite Berjac's failure to comply with [Bonneville's] fiat that it be paid directly, [Bonneville] continued to issue policies sold by [the agent], even after it became aware of [the agent's] financial difficulties." 53 Or App at 453 n 9.

■ Having concluded that ORS 746.515 does not require plaintiff to pay the premiums from the cancelled policies to defendant, the question remains whether plaintiff has alleged sufficient facts in its amended complaint to state a claim for

breach of a contract under which plaintiff was a third-party beneficiary. Plaintiff alleges:

## "IV

"In 1983, Trans-Carrier requested C.I.S. to locate insurance companies that would provide insurance for Trans-Carrier's clients. Pursuant to that request, C.I.S. located and obtained the requested insurance. Specifically, C.I.S. placed the requested insurance with Northland Insurance Company and Integrity Insurance Company, for certain specific John Doe Trans-Carrier clients. As agent for those insurance companies, C.I.S. effected the insurance coverage either through binding the insurance company or by issuing the policies which were in full force and effect at all material times herein.

## "V

"Subsequent to the issuance of the insurance policies referred to in paragraph IV above, those John Doe insureds required financing for the insurance premiums. Trans-Carrier completed a premium finance application for the insured, and then forwarded the completed application to Berjac who then undertook to finance the premium. The financing arrangements were completely arranged and effected through Trans-Carrier after the insurance policy was in effect. Upon information and belief, no insured ever had any direct contact with Berjac.

## "VI

"Prior to the financing of the premiums at issue, C.I.S. notified Berjac that it was to pay the financed premiums directly to C.I.S. C.I.S. had specifically instructed Berjac not to pay the financed premiums to Trans-Carrier and that Trans-Carrier, as an insurance broker, had no authority to collect the premiums. Berjac was informed that Trans-Carrier was failing to forward insurance premiums to C.I.S.

"* * * * *

## "XVIII

"Subsequent to the effecting of the contract of insurance, the John Doe insureds entered into a contract with Berjac for the purpose of financing the premium payments.

## "XIX

"Once the contracts for premium financing between Berjac and the John Doe insureds were executed, Berjac was thereby obligated to advance the total premium payment on

behalf of the insureds. As a result of this contract, C.I.S. was rendered a third party creditor beneficiary of the Berjac/insured premium financing contract."

The *Restatement of Contracts,* § 133, was adopted as the rule in Oregon in *Johnston v. The Oregon Bank,* 285 Or 423, 429-30, 591 P2d 746 (1979). It provides:

"(1)   Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection (3):

"(a)   a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;

"(b)   a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances *and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary,* or a right of the beneficiary against the promisee which has been barred by the Statute of Limitations or by a discharge in bankruptcy, or which is unenforceable because of the Statute of Frauds." (Emphasis in original.)

The amended complaint alleges sufficient facts which, if true, show that the promisor, defendant, would satisfy an actual or asserted duty of the promisee (insureds) to the beneficiary, plaintiff, by performance of the promise.[3] It was error to grant defendant's motion to dismiss.

Reversed and remanded.

---

[3] The result would be the same under *Restatement (Second) Contracts,* § 302, the successor to section 133 of the original Restatement.