Argued and submitted March 25, affirmed June 22, reconsideration denied August 5, petition for review denied August 30, 1988 (306 Or 527)

# NOFZIGER,
## nka Kaufman,
*Appellant,*

*v.*

# KENTUCKY CENTRAL LIFE INSURANCE COMPANY,
*Defendant,*

*and*

# FISHER,
*Respondent.*

## (85-10-218; CA A44698)

758 P2d 348

Steven Schwindt, Canby, argued the cause for appellant. With him on the briefs were Thomas E. Kranovich and Rief and Rief, Canby.

Christopher A. Rycewicz, Portland, argued the cause for respondent. With him on the brief was Bullivant, Houser, Bailey, Pendergrass & Hoffman.

Before Buttler, Presiding Judge, and Rossman and Deits, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Plaintiff appeals a summary judgment for defendant Fisher. She sought recovery against defendant, an insurance agent, on three theories: (1) breach of contract to procure insurance; (2) negligent failure to procure insurance; and (3) negligent misrepresentation. We affirm.

Most of the facts are not in dispute.[1] On March 19, 1985, defendant came to the home of plaintiff and her husband at their request and made a presentation about insurance. Plaintiff and her husband then filled out similar applications for life insurance. The applications stated, in part:

"I understand and agree that only an authorized officer of the company can make, waive, alter or modify any provision of this application and then only in writing. * * *

"* * * I understand and agree that, unless insurance shall take effect as provided in and subject to the terms of a Conditional Receipt bearing the same date and number as this application, no insurance shall take effect unless and until (a) a policy has been issued, (b) the full first premium thereon paid, and (c) the policy is delivered to the Policyowner while the health condition of each Proposed Insured and the other factors affecting insurability, are as stated in this application."

Plaintiff and her husband read that portion of the application and asked no questions about it before signing. Plaintiff stated in a deposition:

"Q. Did you read this part right above your signature on the application?

"A. I'm sure I did. I always do.

"Q. Is that something [your husband] always does is read anything before he signs them [sic]?

"A. Yes, he does and he's one to ask questions.

"Q. Did you have any questions concerning this information above your signature?

"A. No, I don't believe I did.

---

[1] We view the facts in the light most favorable to plaintiff, the non-moving party. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978).

"Q. Do you recall if [your husband] had any questions of Mr. Fisher concerning this portion of the application?

"A. I don't recall."

Neither plaintiff nor her husband paid any money for the insurance; no conditional receipt was ever issued. Plaintiff states in her affidavit[2] that defendant promised that the policy would take effect that evening:

> "After discussing his proposal for life insurance and before taking information for the application, Mr. Fisher indicated that we were going to fill out the application for the insurance and that he would mail it and that the insurance would be in effect that night."

Plaintiff also states that defendant refused an offer of payment by plaintiff, saying that no payment was necessary, because he would set up an automatic checking account withdrawal procedure. Plaintiff stated that she assumed that the insurance company had the right to, and would, use the cash withdrawals for payment. Plaintiff does not assert that any withdrawals were made. Defendant denies making any statement that the policy would be effective immediately and claims that he told plaintiff and her husband that their medical problems might prevent issuance of policies at the quoted rate. He also contends that the automatic withdrawal forms were not completed. Plaintiff said that defendant made "no indications regarding the health of either of us as presenting any problem for temporary coverage." Plaintiff also stated:

> "At no time did I realize nor do I have any knowledge of my husband realizing that Mr. Fisher's method of handling the application and payment constituted a waiver, or modification of the applications provisions.

> "At all times we complied with [defendant's] request and thought that what we were doing was in compliance with the insurance company's requirements.

---

[2] Plaintiff and defendant dispute whether plaintiff's affidavit in opposition to summary judgment is properly before the court. It was submitted in response to KCL's summary judgment motion and defendant's original motion for summary judgment. Plaintiff was allowed to replead against defendant, who then renewed his motion. It is that motion which is the subject of this appeal. ORCP 47 provides that the court should look at the "pleadings, depositions, and admissions on file, together with the affidavits" in ruling on the motion. There appears to be no reason for treating the affidavit differently from the other material in the record, and the rule does not require that result. Consequently, we consider it on appeal.

"At no time prior to [my husband's] death did I realize nor do I have any knowledge that [my husband] realized that an 'agent' was something other than 'an officer of the company.'

"Neither [my husband] nor myself have had any legal training and at the time of the application we did not understand the technical implications behind the term 'authorized officer of the company.'

"At no time did I realize nor do I have knowledge that [my husband] realized that what we were doing at [defendant's] request was a contradiction to the requirements of the insurance application."

No policy was delivered before the husband's death on May 1, 1985.

Plaintiff brought an action against KCL and defendant. The claim against KCL was also dismissed, but plaintiff does not appeal that.

## BREACH OF CONTRACT

■■ There are two possible contracts here which could have been breached. The first would be represented by the application. As to that, defendant prevails. When an insurance application plainly and unambiguously states limitations on the insurance agent's power, those limits bind both parties to the contract. *Lundquist v. Fox*, 51 Or App 183, 188, 624 P2d 667, *rev den* 291 Or 151 (1981).

The other possibility is a contract to procure insurance to take effect on the night of application. Under that contract, defendant would have to be the agent of plaintiff and her husband for her to prevail. Defendant contends that he was the exclusive agent of KCL and, therefore, that contract cannot exist. He relies on ORS 744.165.[3]

---

[3] ORS 744.165 provides, in pertinent part:

"[A]ny person who solicits or procures an application for insurance shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured."

Plaintiff contends for the first time in her reply brief that defendant is an independent agent or broker. In his brief, defendant refers to himself as an exclusive agent for Kentucky Central Life Insurance Company (KCL). Neither contention is supported by the record. The only evidence is this statement in defendant's affidavit: "I have been an agent for [KCL] from prior to March 19, 1985 to date."

Whatever the legal effect of defendant's relationship to KCL would be by statute or in agency law, it does not appear that plaintiff has shown enough to permit a factfinder to conclude that a separate contract to procure temporary insurance existed. Plaintiff states in her affidavit that "[a]fter discussing his proposal of life insurance and before taking information for the application, [defendant] indicated that we were going to fill out the application for the insurance and that he would mail it and that the insurance would be in effect that night." The only mention of temporary insurance in the record is this statement in plaintiff's affidavit: "[Defendant] made no indications regarding the health of either of us as presenting any problem for temporary insurance." Those statements are not enough to support an inference that defendant contracted to procure temporary insurance. Nothing in the record suggests that the parties were concerned with any contract other than the one represented by the application. Accordingly, we affirm the dismissal of the contract claim.

## NEGLIGENT FAILURE TO PROCURE INSURANCE

■■ Plaintiff contends that defendant is liable for negligence in failing to procure insurance under *Precision Castparts v. Johnson,* 44 Or App 739, 607 P2d 763 (1980). She argues that, once defendant stated that he would procure insurance, he incurred a duty to do so.[4]

The facts in the record do not permit an inference that the failure to deliver the policy that plaintiff and her husband applied for was due to the negligence of defendant. We know only that the policy was applied for but was not delivered before husband's death. However, plaintiff also contends that defendant's failure to procure temporary insurance, combined with his assurance that plaintiff and her husband were covered, constitutes negligence. Defendant claims that, under ORS 744.165, he owes no duty to plaintiff.

---

[4] Duty is an issue in this case, because the duty would be created by the contractual or agency relationship:

"In short, unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from the defendant's conduct properly depends on whether that conduct unreasonably created a forseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari v. Portland School District No. 1J,* 303 Or 1, 17, 734 P2d 1326 (1987).

Whether that statute applies raises two questions. First, it has never been held to divest brokers of their responsibilities as agents of the insured, at least as far as their failure to obtain insurance is concerned.[5] As noted above, the record does not tell us whether defendant is a broker or not. Second, even if defendant is an exclusive agent of KCL, there is some question as to whether the statute applies to this situation. It creates an agency, apart from the common law, for limited purposes when one "solicits or procures" an application for insurance. *Paulson v. Western Life Insurance Co.*, 292 Or 38, 61, 636 P2d 935 (1981). The agency is limited to matters relating to an application for insurance and the policy issued. We have previously applied the statute only to misstatements on applications for insurance and interpretations of policy language. *C.I.S. Northwest v. Berjac of Portland*, 87 Or App 233, 237, 742 P2d 618 (1987), *adhered to as clarified*, 89 Or App 117, 119, 747 P2d 406 (1987), *rev den* 305 Or 433 (1988); *Hiransomboon v. Unigard Mutual Ins. Co.*, 46 Or App 493, 497, 612 P2d 306 (1980). The statute has never been read to limit liability of an agent for his own actions.

The facts in the record do not support the contention that defendant undertook to provide temporary insurance. There is no evidence that plaintiff and her husband requested immediate coverage. Defendant's statement that "the insurance would be in effect that night," if made, can only be understood as a statement construing or misconstruing the policy application that plaintiff and her husband had filled out.

At oral argument, plaintiff's counsel argued that the failure to provide immediate coverage was simple negligence, because unexpected death is precisely the kind of risk reasonably foreseeable by life insurance salespeople, or that the pleading at least presents a jury question. Plaintiff states that the issue is "whether that conduct unreasonably created a forseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari v. Portland School District No.*

---

[5] *Seiders v. Hefner*, 89 Or App 55, 59-60, 747 P2d 1003 (1987), *rev den* 305 Or 576 (1988), is not to the contrary. In that case we rejected a requested jury instruction stating that brokers are the agents of the insured in favor of an instruction which mirrors ORS 744.165. However, we did not decide what broker conduct the statute applied to.

*1J, supra,* n 4. That is incorrect; defendant's liability for failure to provide coverage would still flow from his agency or contractual relationship to plaintiff, and that relationship would define his duty. Plaintiff has provided no evidence that an agency or contract relationship between defendant and plaintiff included a duty to procure immediate coverage. Accordingly, we affirm the trial court as to the negligent failure to procure claim.

## NEGLIGENT MISREPRESENTATION

▉ Plaintiff argues that defendant's representation that plaintiff and her husband were covered by insurance as of March 19, 1985, constitutes negligent misrepresentation. Defendant argues that the tort is not recognized in Oregon and that any reliance by plaintiff and her husband on his purported statement was not justifiable because of the clear language to the contrary in the application. Plaintiff contends that she and her husband properly relied on defendant's superior expertise.

The *Restatement* defines the tort of negligent misrepresentation:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Restatement (Second) Torts,* § 552(1).

Whether the tort exists in Oregon has not been decided. The Supreme Court recently declined to address the question, deciding that the plaintiff in that case had failed to file within the applicable limitation period. *Duyck v. Tualatin Valley Irrigation Dist.,* 304 Or 151, 160, 164, 742 P2d 1176 (1987). It also stated that, if the tort were to be recognized, its elements could differ from those in the *Restatement:*

> "We note that the parties do not elaborate as to why such a claim should or should not be recognized in Oregon; rather they devote their arguments on this issue to whether the plaintiff has pleaded and proved the elements stated in the Restatement (Second) Torts, section 552 (1977). The Restatement is not, nor does it purport to be, the law of this

state or any other state. Mere reference to the Restatement does not 'substitute for an independent analysis and presentation of the elements that make, or should make, defendants liable under Oregon law, when the relevance of some of the elements to a theory of liability is an open question in this state.' " 304 Or at 156 n 3 (citations omitted).

Defendant asserts that, even if the tort is recognized, plaintiff has failed to allege facts sufficient to support the element of justifiable reliance. Although the elements of the tort are not clear, *Duyck* did not question the element of justifiable reliance; instead, the court emphasized the problem of determining how close the relationship between a plaintiff and a defendant should be for liability to attach. 304 Or at 157-8. Accordingly, we address the reliance issue.

The difficulty is that there is no nexus between the agent's statement and plaintiff's reliance. The statement was not combined with an interpretation of the policy language, and it was made before plaintiff and her husband had reviewed the application. Plaintiff states that she did not know that the agent was not an "officer of the company" with the power to change the contract. Somewhat contradictorily, she also states that she did not know that the agent's words contradicted the policy. From that one might infer that she was unable to see the clear contradiction and did not understand the policy. That is not enough. Nothing in the record adequately justifies the claimed reliance on defendant's statement.

Plaintiff seeks to evade the problem by contending that the issue of negligence on her part is irrelevant, because she "had a right to rely on the superior expertise of [her] agent and had the right to assume that [her] agent performed its duty." *Precision Castparts v. Johnson, supra,* 44 Or App at 743. However, in that case the plaintiff had not read the policy; we held that it had no duty to do so. 44 Or App at 743. Moreover, as noted above, plaintiff has failed to provide facts which would permit the inference that defendant was plaintiff's agent for the purpose of procuring immediately effective insurance. Therefore, even if the tort of negligent misrepresentation is recognized in Oregon, an issue on which we need express no opinion, plaintiff cannot prevail.

Affirmed.