972 F.2d 1343
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SWANSON BROS. LUMBER CO., INC., Plaintiff-Appellant,
v.
VAN WATERS & ROGERS INC.; Koppers Company, Inc.,
Defendants-Appellees.
 No. 91-35190.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 8, 1992.*
Decided July 17, 1992.
 
 Before GOODWIN, TANG and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Swanson Brothers Lumber Company ("Swanson") brought this diversity action for breach of contract, breach of warranties and negligent misrepresentation against Koppers Company ("Koppers") and Van Waters and Rogers, Inc., ("VWR"). Swanson seeks to recover damages arising out of the discoloration of its lumber allegedly caused by using NP-1, a chemical wood preservative and sap stain control product manufactured by Koppers and distributed by VWR. After a bench trial, Magistrate Judge Hogan, who tried the case with the consent of all parties, dismissed the action. We affirm.
 
 FACTS
 
 3
 VWR's sales representative, Vic Berkey, contacted Chuck Eslick, Swanson's plant manager, and offered to sell Swanson NP-1. Berkey orally represented to Eslick that NP-1 required no additives, was stable to pH and water hardness and suitable for treatment of green douglas fir lumber. Swanson purchased NP-1 through Eslick but, after using it, experienced significant discoloration due to iron stain on lumber treated with NP-1.
 
 
 4
 The packing slip, invoice and label accompanying drums of NP-1 set forth a disclaimer of warranty and limitation of remedy in bold capital letters:
 
 
 5
 IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT SELLER MAKES NO EXPRESS OR IMPLIED WARRANTIES OF FITNESS OR OF MERCHANTABILITY OR OF ANY OTHER KIND WHATSOEVER EXCEPT THAT THE GOODS SOLD HEREUNDER SHALL BE OF THE QUANTITY ABOVE SPECIFIED. BUYER ASSUMES ALL THE RISK OF LIABILITY WHATSOEVER RESULTING FROM THE USE OF SUCH GOODS, WHETHER USED SINGULARLY OR IN COMBINATION WITH OTHER SUBSTANCES. SELLER'S LIABILITY FOR NONCONFORMING GOODS IS EXCLUSIVELY LIMITED, AT THE SELLER'S OPTION, TO REPLACEMENT OF THE DEFECTIVE GOODS OR THE PURCHASE PRICE OF SUCH GOODS AND UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.
 
 
 6
 Exhibit 207. The packing slip and invoice further provide that the terms and conditions stated there are all of the terms of the sale and purchase unless there is a prior written agreement, and that modifications are prohibited unless a written agreement is signed by the party to be bound.
 
 
 7
 In pretrial proceedings the district court treated VWR's and Kopper's motion for summary judgment as a motion to strike Swanson's claim for negligent misrepresentation, and struck this claim. Following a bench trial on the remaining claims, the court entered judgment for VWR and Koppers. This appeal followed.
 
 DISCUSSION
 
 8
 The district court concluded Swanson's breach of contract claim was barred by the conspicuous terms of the packing slip, that constituted the agreement between the parties. Swanson disputes the court's finding that the terms of the packing slip constituted the agreement between the parties, barring evidence of Berkey's pre-sale oral representations.
 
 
 9
 The court found that when Eslick picked up the first order of NP-1 he was required to accept a packing slip prior to the product's release. Eslick had previously purchased products from VWR subject to a similar packing slip and he agreed that the slip was "part of the deal." Eslick and Larry Konnie, an employee of Swanson, testified that Swanson has certain terms and conditions on its own invoices and that it is the custom in the industry to make sales subject to such terms without discussing them. We cannot say the district court's factual finding that the parties intended the terms of the packing slip to constitute the agreement between them was clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564 (1985); Ore.Rev.Stat. § 72.2020 (1991) (in order for a merger clause to be valid, parties must intend a writing to be their complete agreement).[1]
 
 
 10
 Swanson contends the disclaimers of warranty are ineffective because the parties did not agree to them, they were not sent within a reasonable time after the contract was formed and Swanson is not a merchant. We disagree.
 
 
 11
 A seller may disclaim warranties and limit liability. Ore.Rev.Stat. §§ 72.3160, 72.7190 (1991). In order for a limiting provision to be valid, there need not be "explicit evidence that there were offers and counter-offers on the limitation terms or comparable evidence of 'haggling.' " The limitation must only be part of the parties' bargain in fact. K-Lines, Inc., v. Roberts Motor Company, 541 P.2d 1378, 1384 (Or.1975). "To be part of their bargain in fact, the provision limiting the defendant's liability must have been bargained about, brought to [the plaintiff's] attention, or be conspicuous." Atlas Mutual Ins. Co. v. Moore Dry Kiln Co., 589 P.2d 1134, 1136 (Or.Ct.App.1979).
 
 
 12
 The disclaimers do not constitute ineffective post-sale disclaimers because the district court found Eslick was required to accept the packing slip prior to the release of the product. See Bowdoin v. Showell Growers, Inc., 817 F.2d 1543, 1545 (11th Cir.1987) (disclaimers that were conspicuous before the contract for sale was formed are effective; post-sale disclaimers are ineffective). This finding is not clearly erroneous and is confirmed by the testimony of Eslick. Furthermore, the conspicuous disclaimer is also printed on the label of each NP-1 drum, along with a statement that if the terms are not acceptable the product can be returned at once unopened. See Hill v. BASF Wyandotte Corp., 696 F.2d 287, 290-91 (4th Cir.1982) (disclaimer printed conspicuously on label of herbicide can gave farmer constructive knowledge of terms of disclaimer before the contract was formed).[2]
 
 
 13
 Swanson contends the district court erred in striking its claim for negligent misrepresentation. At the time the district court made its decision, the tort of negligent misrepresentation was not recognized in Oregon. Since the time of the district court's decision, the tort has been recognized by a number of courts of appeals. See Gish v. Douglas County, 817 P.2d 1341, 1343 n. 1 (Or.Ct.App.1991); Onita Pacific Corp. v. Trustees of Bronson, 803 P.2d 756, 762-64 (Or.Ct.App.1990), review allowed, 811 P.2d 144 (Or. April 30, 1991) (No. A46940).
 
 
 14
 The district court did not address the merits of Kopper's and VWR's summary judgment motion on the negligent misrepresentation claim. Had it done so, we would review that determination de novo. See Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). The record is complete, however, and it is plain from the record that the motion for summary judgment should have been granted. Accordingly, we decide the issue. See United States v. Hendricks, 743 F.2d 653, 656 (9th Cir.1984), cert. denied, 470 U.S. 1006 (1985) (this court has the power to decide issue not reached by the district court where the record is complete and the district court's determination would be subject to de novo review).
 
 
 15
 Summary judgment is appropriate if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to prevail, Swanson had to present evidence that, among other things, Koppers or VWR "supplie[d] false information for the guidance of others in their business transactions." Nofziger v. Kentucky Central Life Ins. Co., 758 P.2d 348, 352 (Or.Ct.App.1988) (quoting Restatement (Second) of Torts § 552(1)).
 
 
 16
 The uncontroverted evidence establishes as a matter of law the absence of this crucial element of Swanson's negligent misrepresentation claim.
 
 
 17
 Swanson's complaint alleges that representatives of VWR and Koppers "represented to [Swanson] that the addition of an unspecified amount of Borax and/or phosphoric acid would prevent and/or eliminate the stain caused by the NP-1." Complaint at 7. Eslick testified in his deposition that he could not say Berkey ever assured him or anyone else that borax would eliminate iron stain. Konnie admitted in his deposition that he never received any assurances that phosphoric acid would successfully remove iron stain. CR 46 at 8; Exhibit E. Swanson has not come forward with any evidence to the contrary.
 
 
 18
 Because there is no genuine issue as to any material fact, Koppers and VWR are entitled to judgment as a matter of law on the negligent misrepresentation claim. See Celotex, 477 U.S. at 323.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because we conclude that the evidence is sufficient to support the court's finding that the parties intended the terms of the packing slip to constitute their agreement, we need not determine whether the district court erred in ruling that the merger clause is conspicuous. Cf. Seibel v. Layne & Bowler, Inc., 641 P.2d 678, 671 (Or.Ct.App.1982) (inconspicuous merger clause provides little or no evidence of the parties' intent that the terms of a writing constitute their agreement)
 
 
 [2]
 Because we conclude the disclaimers were not ineffective post-sale disclaimers, we need not determine whether Swanson is a merchant within the terms of Ore.Rev.Stat. § 72.1040(1) (1991). See Ore.Rev.Stat. § 72.2070(2)(b) (when a disclaimer is not expressed until after a contract between merchants is formed, such disclaimers are not incorporated into the parties' agreement to the extent they materially alter it)